United States District Court
Southern District of Texas
**ENTERED**
August 02, 2022
Nathan Ochsner, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
GALVESTON DIVISION

| | |
|---|---|
| MICHELLE CHARLES, § § Plaintiff. § § VS. § UNIVERSITY OF TEXAS MEDICAL § BRANCH AT GALVESTON, § § Defendant. § | CIVIL ACTION NO. 3:20-cv-00341 |

## MEMORANDUM AND RECOMMENDATION

Pending before me is a Motion for Summary Judgment filed by Defendant University of Texas Medical Branch at Galveston ("UTMB"). *See* Dkt. 31. Having reviewed the briefing, the record, and the applicable law, I recommend that the motion be **GRANTED**.

## BACKGROUND

Plaintiff Michelle Charles ("Charles") brings this race and disability discrimination, hostile work environment, and retaliation case pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e *et seq.*, and the Rehabilitation Act of 1973, 29 U.S.C. § 794.[1] The undisputed facts and timeline of relevant events are captured below.

- **September 19, 2016**: UTMB—acting through the Emergency Department Nurse Manager, Pamela Cruz ("Cruz")—hires Charles as a Health Unit Coordinator ("HUC"). HUC duties included, among other things, maintaining the whiteboards in patients' rooms and securing and logging patient belongings.

---

[1] On July 12, 2021, United States District Judge Jeffrey Brown dismissed Charles's claims under 42 U.S.C. § 1981, 42 U.S.C. § 1983, and the Family Medical Leave Act ("FMLA") for lack of subject matter jurisdiction, in addition to dismissing her claims for punitive damages. *See* Dkt. 20.

- **January 12, 2018**: Cruz issues Charles a "coaching" regarding Charles's failure to update whiteboards.

- **June 6, 2018**: Cruz issues Charles a verbal warning for failing to update whiteboards on May 29, 2018.

- **August 29, 2018**: Cruz issues Charles a written warning for failing to properly secure and inventory a patient's belongings.

- **September 12, 2018**: Charles submits a grievance to Human Resources complaining that the Emergency Department is "short staffed" and she was "being singled out for something that affects us all." Dkt. 32-4 at 4. The letter does not mention Charles's race or disability.

- **January 11, 2019**: Cruz issues Charles another written warning for failing to properly secure patient belongings.

- **January 21, 2019**: Charles files another grievance complaining that Cruz "has a personal vendetta" and that Cruz does not write up other employees for the same behavior for which she disciplines Charles. *Id.* at 6.

- **February 2019**: Cruz transfers to another UTMB location and is replaced by Chad Connally ("Connally") as Nurse Manager.

- **April 13, 2019**: Charles releases belongings to the wrong patient.

- **April 23, 2019**: Connally issues a Notice of Intent to Terminate.

- **April 24, 2019**: Charles responds in writing to the Notice of Intent to Terminate and requests a disability accommodation. Upon receiving Charles's request for a disability accommodation, UTMB's Institutional Americans with Disabilities Act ("ADA") Officer, Lela Lockett-Ware ("Lockett-Ware"), emails Charles to begin the interactive process under the ADA and provides her with the necessary forms.

- **April 25, 2019**: Connally places Charles on administrative leave.

- **May 7, 2019**: Charles emails Lockett-Ware disclaiming the need for accommodation and requests access to the Employee Assistance Program due to stress in the workplace and a hostile work environment.

- **May 8, 2019**: Charles returns the completed ADA forms and designates Dr. Hanan Hussein ("Dr. Hussein") as the physician with whom UTMB could confer regarding Charles's requested accommodation.

- **May 9, 2019**: Lockett-Ware speaks with Charles regarding her accommodation request and extends her administrative leave by 15 days.

- **June 7, 2019**: Dr. Hussein recommends two accommodations for Charles: (1) lift no more than 15-20 pounds, and (2) sit for no more than one hour without getting up and walking for at least five minutes. In the interim, UTMB had further extended Charles's administrative leave. Lockett-Ware confers with Connally regarding whether the Emergency Department could provide such accommodations. Connally explains that lifting more than 20 pounds is not an essential job function of HUCs, and HUCs already walk around at least five minutes of every hour.

- **June 11, 2019**: UTMB determines that no accommodation is necessary and issues a letter to that effect. Lockett-Ware conveys this information to Charles by phone, and Charles asks Lockett-Ware whether UTMB had considered any recommendations from her neurologist. Lockett-Ware states that UTMB has not received authorization to speak with anyone other than Dr. Hussein. Later that day, Lockett-Ware receives a fax from Dr. Mohamed Khalil ("Dr. Khalil") stating that Charles is unable to return to work until further testing is completed and a treatment plan is instituted. Lockett-Ware forwards Dr. Khalil's letter to Leave Management, the office that handles Family and Medical Leave issues.

- **June 13, 2019**: UTMB approves Charles's request for a leave of absence under the FMLA.

- **July 12, 2019**: Charles's FMLA leave expires.

- **July 18, 2019**: UTMB terminates Charles's employment.

After the discovery period concluded, UTMB filed a Motion for Summary Judgment, seeking to have all claims brought by Charles thrown out. *See* Dkt. 31. Charles filed a response to the Motion for Summary Judgment, and UTMB

followed up with a reply in support of its Motion for Summary Judgment. *See* Dkts. 37 and 38. I also permitted Charles to file a Sur-Reply. *See* Dkt. 41.

## LEGAL STANDARD

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). "A fact is material if it could affect the outcome of the lawsuit, and a dispute about a material fact is genuine if the evidence is such that a reasonable jury could return a verdict for the non-moving party." *McInnis v. Alamo Cmty. Coll. Dist.*, 207 F.3d 276, 279 (5th Cir. 2000). "In determining whether there is a dispute regarding a material fact, we consider all the evidence in the record but do not make credibility determinations or weigh the evidence." *MAN Roland, Inc. v. Kreitz Motor Express, Inc.*, 438 F.3d 476, 478 (5th Cir. 2006). "The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).

The "party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (quoting FED. R. CIV. P. 56(c)). "If the moving party fails to meet this initial burden, the motion must be denied, regardless of the nonmovant's response." *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994). If the movant carries its initial burden, the burden shifts to the nonmovant to present competent summary judgment evidence showing the existence of a genuine dispute of material fact. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87 (1986). Upon the shifting burden, "[u]nsubstantiated assertions, improbable inferences, and unsupported speculation are not sufficient to defeat a

motion for summary judgment." *Brown v. City of Houston*, 337 F.3d 539, 541 (5th Cir. 2003).

## PRELIMINARY ISSUES

Before determining whether summary judgment is proper on some or all of Charles's claims, there are a couple of preliminary procedural and evidentiary issues I need to address

First, UTMB asks me to treat its Motion for Summary Judgment as unopposed, strike Charles's response as untimely, or both. This request is made because Charles filed her response to the Motion for Summary Judgment a whopping two (yes, two) business days late "due to a technical issue with the electronic filing system and the reformatting of exhibits to be compliant with the filing system." Dkt. 41 at 2–3. Although this two-day delay surely has not prejudiced UTMB in the least, UTMB wants me to impose what amounts to death penalty sanctions on Charles for the late filing. I am not going to do so. The words of one my colleagues on the federal bench, Judge Jonathan Goodman, are particularly appropriate here: "defense counsel may want to brush up on the concepts o[f] karma, goodwill, grace, compassion, equity, charity, flexibility, respect, spirituality, selflessness, kindness, public spirit, social conscience and empathy." Debra Cassens Weiss, *Judge suggests lawyer who opposed extension may want to brush up on karma concepts*, ABA JOURNAL (Mar. 27, 2020), *available at* https://www.abajournal.com/news/article/judge-suggests-lawyer-who-opposed-extension-may-want-to-brush-up-on-concept-of-karma.

Second, some objections have been lodged both by Charles and UTMB to the summary judgment evidence presented by the other side. To start, Charles objects to two paragraphs contained in the Connally declaration submitted by UTMB, arguing that such testimony constitutes "hearsay and hearsay within hearsay." Dkt. 37 at 24. After carefully reviewing the portions of the Connally declaration in dispute, I overrule Charles's objections. The declaration simply does not contain hearsay. The only out-of-court statement offered for the truth of the matter in the

5

declaration is a statement made by Charles. That statement is not hearsay since it is an admission by a party opponent. *See* FED. R. EVID. 801(d)(2)(A).

Turning to UTMB's objections to Charles's summary judgment evidence, UTMB argues that the declarations of Angela White (Exhibit 28) and George Beasley (Exhibit 29) should be struck because these witnesses were untimely designated. UTMB also asks that I strike a number of other exhibits (Exhibits 2-5, 27, 30, and 33) because they are unauthenticated. I overrule UTMB's objections as moot because "this evidence does not affect the disposition of the summary judgment motion." *Lilly v. SSC Houston Sw. Operating Co.*, No. 4:20-CV-03478, 2022 WL 35809, at *3 n.2 (S.D. Tex. Jan. 4, 2022). *See also Jones v. United Parcel Serv., Inc.*, No. 3:06-CV-1535-L, 2008 WL 2627675, at *6 (N.D. Tex. June 30, 2008) (denying objections to summary judgment evidence as moot because the evidence was "not central to the court's conclusions, and sustaining the parties' objections would not change the result").

## ANALYSIS

Now it is time to consider whether summary judgment is appropriate. I will address, one-by-one, the live claims presented in the Amended Complaint.

### A.   TITLE VII DISCRIMINATION

First, Charles contends that UTMB discriminated against her on account of her race in violation of Title VII. *See* 42 U.S.C. § 2000e-2(a) (prohibiting discrimination "against any individual with respect to [her] compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin").

Unlawful discrimination may be established through either direct or circumstantial evidence. *See Jackson v. Cal-Western Packaging Corp.*, 602 F.3d 374, 377 (5th Cir. 2010). Because Charles relies on circumstantial evidence, I must utilize the familiar burden-shifting test set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973) to analyze her discrimination claims. *See EEOC v. LHC Grp., Inc.*, 773 F.3d 688, 694 (5th Cir. 2014). Under this framework, a plaintiff

must first establish a prima facie case of discrimination. *See id.* If the plaintiff establishes a prima facie case, the burden shifts to the employer to articulate a legitimate, non-discriminatory reason for its employment decision. *See Mayberry v. Vought Aircraft Co.*, 55 F.3d 1086, 1089 (5th Cir. 1995). The defendant's burden is low—it is merely one of production, not persuasion. *See Daigle v. Liberty Life Ins. Co.*, 70 F.3d 394, 396 (5th Cir. 1995) ("If the employer produces any evidence 'which, taken as true, would permit the conclusion that there was a nondiscriminatory reason for the adverse action,' then the employer has satisfied its burden of production." (quoting *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 509 (1993)). If the employer articulates a legitimate, non-discriminatory reason for its employment decision, the prima facie case is dissolved, and the burden shifts back to the plaintiff to establish that the reason proffered by the employer is merely a pretext for discrimination. *See McDonnell Douglas*, 411 U.S. at 804.

### 1. *Prima Facie Case*

UTMB contends that Charles has failed to make out a prima facie case of discrimination under Title VII. To establish a prima facie case of discrimination, a plaintiff must show that she "(1) is a member of a protected class; (2) was qualified for her position; (3) was subject to an adverse employment action; and (4) was replaced by someone outside the protected class, or, in the case of disparate treatment, shows that others similarly situated were treated more favorably." *Okoye v. Univ. of Tex. Houston Health Sci. Ctr.*, 245 F.3d 507, 513 (5th Cir. 2001) (cleaned up). The parties do not dispute that Charles satisfies the first three elements. Thus, whether summary judgment is proper turns on the fourth element. However, UTMB fails to acknowledge disparate treatment as a means of establishing the fourth element. Instead, UTMB argues for summary judgment based entirely on the fact that Charles was replaced by a Black woman—i.e., someone who was not outside Charles's protected class.

I recognize that the case UTMB chose to cite for its preferred elements of a Title VII discrimination claim does not discuss disparate treatment. *See*

*Shackelford v. Deloitte & Touche, LLP*, 190 F.3d 398, 404 (5th Cir. 1999) (discussing only replacement by someone outside the protected class). However, the controlling authority in the Fifth Circuit states: "the single fact that a plaintiff is replaced by someone within the protected class does not negate the possibility that the discharge was motivated by discriminatory reasons." *Nieto v. L&H Packing Co.*, 108 F.3d 621, 624 n.7 (5th Cir. 1997) (cleaned up). Because UTMB fails to address disparate treatment, or even make arguments that would relate to it, I presume that Charles can establish a prima facie case of discrimination under Title VII. Accordingly, UTMB is not entitled to summary judgment based on Charles's alleged failure to make out a prima facie case of discrimination under Title VII.

### 2. *Legitimate Non-discriminatory Reason*

When a plaintiff establishes a prima facie discrimination case, the burden then shifts to the employer to articulate a legitimate, non-discriminatory reason for the adverse employment action. *See Nall v. BNSF Ry. Co.*, 917 F.3d 335, 341 (5th Cir. 2019). "If the employer produces any evidence, which, taken as true, would permit the conclusion that there was a nondiscriminatory reason for the adverse action, then the employer has satisfied its burden of production." *Daigle*, 70 F.3d at 396 (quotation omitted).

UTMB has put forth sufficient evidence that would allow a reasonable juror to conclude that it terminated Charles for a legitimate, non-discriminatory reason. Specifically, UTMB contends that Charles's "job performance was poor[,] . . . . [s]he repeatedly failed to follow UTMB's written policies regarding her job requirements, and failed to follow instructions from her managers to complete her job duties." Dkt. 31 at 20. These are all legitimate, non-discriminatory reasons for termination. *See LeMaire v. La. Dep't of Transp. & Dev.*, 480 F.3d 383, 390 (5th Cir. 2007) (failure to follow a directive from an employer is a legitimate, non-retaliatory reason for termination); *Rachid v. Jack in the Box, Inc.*, 376 F.3d 305, 313 (5th Cir. 2004) (holding that "violating a non-discriminatory company policy

8

is adequate grounds for termination"); *Little v. Republic Refin. Co.*, 924 F.2d 93, 96 (5th Cir. 1991) (holding that plaintiff's poor job performance was a legitimate, non-discriminatory reason for termination).

Because UTMB has satisfied its burden of production, the burden shifts back to Charles to establish a genuine issue of material fact by showing that UTMB's proffered reasons for her termination are pretextual.

### *3. Pretext*

To avoid summary judgment, "[Charles] must present substantial evidence that [UTMB's] legitimate, nondiscriminatory reason[s] for termination [are] pretextual." *Delaval v. PTech Drilling Tubulars, L.L.C.*, 824 F.3d 476, 480 (5th Cir. 2016) (quotation omitted). This means "[Charles] must substantiate h[er] claim of pretext through evidence demonstrating that discrimination lay at the heart of [UTMB's] decision." *Price v. Fed. Express Corp.*, 283 F.3d 715, 720 (5th Cir. 2002). *See also Goudeau v. Nat'l Oilwell Varco, L.P.*, 793 F.3d 470, 478 (5th Cir. 2015) ("At the end of the day, the pretext inquiry asks whether there is sufficient evidence demonstrating the falsity of the employer's explanation, taken together with the prima facie case, to allow the jury to find that discrimination was the but-for cause of the termination." (quotation omitted)).

"In pretext cases, it is not enough that the [employer] was wrong about the underlying facts that motivated the adverse employment action. The only question is whether the employer had a good-faith belief that the facts that motivated the adverse action were true." *Lucas v. T-Mobile USA, Inc.*, 217 F. Supp. 3d 951, 957 (S.D. Tex. 2016). "Pretext is established either through evidence of disparate treatment or by showing that the employer's proffered explanation is false or unworthy of credence." *Delaval*, 824 F.3d at 480 (quotations omitted). "In conducting a pretext analysis, the court does not engage in second-guessing of an employer's business decisions." *Roberson-King v. La. Workforce Comm'n*, 904 F.3d 377, 381 (5th Cir. 2018) (quotation omitted).

9

In her response to UTMB's Motion for Summary Judgment, Charles states in conclusory fashion that she was "treated less favorably than other similarly situated employees who . . . were non-Black." Dkt. 37 at 15. This statement, taken alone, is far from sufficient to meet her burden on pretext. Indeed, the Fifth Circuit has consistently held that an employee's subjective belief that she has suffered discrimination is insufficient to establish pretext. *See EEOC v. La. Off. of Cmty. Servs.*, 47 F.3d 1438, 1448 (5th Cir. 1995) ("[a] subjective belief of discrimination, however genuine, cannot be the basis of judicial relief"). Notably absent from Charles's summary judgment response is *any* evidence supporting her claim that she was treated differently than those employees who were non-Black. The best Charles can do to support her pretext argument is cite to an exhibit (Exhibit 48) that is nowhere to be found in the summary judgment record. *See* Dkt. 37 at 15 n.29. Charles also fails to provide any explanation as to when and how she was treated differently than those employees who were non-Black. Charles's contention that her termination was racially motivated is belied by the fact that the person UTMB hired to replace her is, like Charles, a Black woman. At its core, Charles claim is that UTMB's decision to terminate her employment was unreasonable. But that does not come anywhere close to creating a factual dispute on the pretext issue. It is well-settled that employers are "entitled to be unreasonable" in terminating their employees "so long as [they] do[ ] not act with discriminatory animus." *Sandstad v. CB Richard Ellis, Inc.*, 309 F.3d 893, 899 (5th Cir. 2002). *See also Owens v. Circassia Pharms., Inc.*, 33 F.4th 814, 826 (5th Cir. 2022) ("[T]he inquiry is not whether [UTMB] made a wise or even correct decision to terminate [Charles] . . . . Instead, the ultimate determination, in every case, is whether, viewing all of the evidence in a light most favorable to the plaintiff, a reasonable factfinder could infer discrimination." (cleaned up)).

Because Charles cannot demonstrate that the legitimate, non-discriminatory reasons UTMB offered for terminating her were pretextual, UTMB is entitled to summary judgment on Charles's Title VII discrimination claim.

### B. HOSTILE WORK ENVIRONMENT

Charles also asserts a hostile work environment claim. The five elements of a hostile work environment claim are: (1) plaintiff is a member of a protected class; (2) plaintiff was subject to unwelcome harassment; (3) the harassment was based on plaintiff's protected class status; (4) the harassment was severe or pervasive enough to alter the condition of plaintiff's employment and create an abusive working environment; and (5) the employer knew or should have known of the harassment and failed to take action. *See Abbt v. City of Houston*, 28 F.4th 601, 607 (5th Cir. 2022). After correctly identifying all the elements of a hostile work environment claim, UTMB states that Charles "cannot show she was subjected to unwelcome harassment, that any such harassment was based on her race, that any such harassment affected a term, condition, or privilege of her employment, or that UTMB knew or should have known of any such harassment and failed to take prompt remedial action." Dkt. 31 at 22. UTMB goes on to highlight how Charles's own testimony negates that any perceived harassment was based on Charles's protected class status. Charles does not address these assertions in her summary judgment response, nor does she point to any other evidence that might tell a different story. Because Charles has failed to provide any evidence supporting elements 2-5 of a hostile work environment claim, I recommend that UTMB's motion for summary judgment be granted on this claim.

### C. TITLE VII RETALIATION

Charles also claims that she was retaliated against in violation of Title VII. Retaliation claims under Title VII are analyzed under the *McDonnell Douglas* burden-shifting framework. *See Wheat v. Fla. Par. Juv. Just. Comm'n*, 811 F.3d 702, 705 (5th Cir. 2016). To set out a prima facie case of retaliation under Title VII, Charles must show that (1) she engaged in an activity protected by Title VII; (2) she suffered an adverse employment action; and (3) there is a causal link between elements (1) and (2). *See Abbt*, 28 F.4th at 610. It is the third element, the causation piece, that dooms Charles's prima facie case on the Title VII retaliation claim.

On April 23, 2019, UTMB sent Charles a Notice of Intent to Terminate, putting her on notice that UTMB "intend[ed] to terminate [her] employment with UTMB due to [her] continued failure to maintain satisfactory work performance standards." Dkt. 32-2 at 5. UTMB asserts that Charles "never reported or alleged any unlawful practices by UTMB until" after UTMB sent out the Notice of Intent to Terminate. Dkt. 31 at 26. Charles does not dispute this. Her April 24, 2019 response to UTMB's Notice of Intent to Terminate thus represented the first time she complained of discrimination based on race and sought an accommodation for an alleged disability.[2] But even assuming that Charles's April 24, 2019 response somehow constitutes a protected activity under Title VII, "[a]n adverse action contemplated by an employer before learning of the protected activity 'is no evidence whatever of causality.'" *Wojcik v. Mem'l Hermann Health Sys.*, No. CV H-17-3198, 2019 WL 4887265, at *6 (S.D. Tex. Oct. 3, 2019) (quoting *Clark Cty. Sch. Dist. v. Breeden*, 532 U.S. 268, 272 (2001)). In short, Charles's prima facie case for Title VII retaliation fails because she cannot establish a causal connection between her termination (which she became aware of through the April 23, 2019 Notice of Intent to Terminate) and her Title VII-protected activity of complaining to management (which took place one day *after* she received the April 23, 2019 Notice of Intent to Terminate).

Even if Charles could, hypothetically, establish a prima facie case for Title VII retaliation, that just means that the burden would shift to UTMB to demonstrate a legitimate, nonretaliatory reason for terminating Charles. As already noted, UTMB has easily satisfied this burden, advancing several reasons—most notably, poor job performance—for terminating Charles's employment. The burden then shifts back to Charles to provide "sufficient evidence that [UTMB's] proffered reason is a pretext for retaliation." *Nall*, 917 F.3d at 349. Charles cannot

---

[2] Charles did file a grievance with the UTMB back in September 2018, but that grievance did not allege that UTMB had engaged in any unlawful conduct. *See* Dkt. 32-4 at 4. Charles simply complained to the Human Resources department that she felt that she was "being singled out for something that affects us all." *Id.*

meet this burden. The fact that UTMB informed Charles that it intended to terminate her employment before she ever engaged in any protected activity makes it impossible for a factfinder to conclude that UTMB's proffered explanation for Charles's termination "is false or unworthy of credence." *Delaval*, 824 F.3d at 480 (quotations omitted). This is an independent reason why summary judgment is appropriate in favor of UTMB on the Title VII retaliation claim.

### D. DISCRIMINATION UNDER THE REHABILITATION ACT

Next, Charles contends that UTMB discriminated against her based on a disability in violation of the Rehabilitation Act. The disability Charles suffers from is not immediately clear, though the parties do not dispute that Charles suffers from a disability.

For summary judgment purposes, disability discrimination claims under the Rehabilitation Act are also analyzed under the familiar burden-shifting framework set forth in *McDonnell Douglas*. *See Cohen v. Univ. of Tex. Health Sci. Ctr.*, 557 F. App'x 273, 277 (5th Cir. 2014). To survive summary judgment on a Rehabilitation Act discrimination claim, Charles must first establish a prima facie case. The four elements of a prima facie discrimination claim under the Rehabilitation Act require Charles to demonstrate: (1) she is a disabled individual; (2) she is otherwise qualified; (3) she works for a program or activity receiving federal financial assistance; and (4) she was discriminated against "solely" because of her disability. *Hileman v. City of Dall.*, 115 F.3d 352, 353 (5th Cir. 1997) (quotation omitted).

Charles satisfies the first three elements—she has a disability, she was otherwise qualified for the job, and UTMB is a program receiving federal financial assistance. So, whether summary judgment is proper turns on the fourth element. UTMB contends that Charles's "Rehabilitation Act discrimination claim fails because she cannot prove she was discriminated against, or that any such discrimination was solely due to her disability." Dkt. 31 at 29.

The causation requirement dooms any direct claim Charles may have for disability discrimination under the Rehabilitation Act. A plaintiff seeking to prevail

13

on a Rehabilitation Act discrimination claim must prove that the discrimination against her took place "solely because of the disability." *Soledad v. U.S. Dep't of Treasury*, 304 F.3d 500, 505 (5th Cir. 2002) (quotation omitted). This is a much higher level of causation than that required for Title VII discrimination claims. *See id.* To establish causation for Title VII discrimination claims, a plaintiff must merely show that the discrimination was the "motivating factor" behind the adverse employment action. *Alvarado v. Tex. Rangers*, 492 F.3d 605, 611 (5th Cir. 2007). The uncontroverted summary judgment evidence establishes that UTMB had no knowledge of Charles's disability until she requested a disability accommodation on April 24, 2019, a day *after* UTMB informed Charles that it intended to terminate her employment for poor job performance. This timeline conclusively demonstrates that Charles cannot establish that her disability was the sole cause of her termination from UTMB.

Where, as here, a claim of disability discrimination is based in part on a theory of failure to accommodate the plaintiff's disability, the plaintiff must show by a preponderance of the evidence (1) that she had a disability; (2) that the employer had notice of her disability; (3) that she could perform the essential functions of the position with no more than a reasonable accommodation by the employer; and (4) that the employer denied her request for a reasonable accommodation. *See Dugger v. Stephen F. Austin State Univ.*, 232 F. Supp. 3d 938, 954 n.7 (E.D. Tex. 2017) (noting that "[t]he Fifth Circuit has sometimes articulated those elements differently, but the court has been consistent with respect to the substance of the elements"). Summary judgment is appropriate in favor of UTMB on the failure to accommodate claim because Charles does not present any evidence that creates a fact issue on the fourth element: that UTMB denied her request for a reasonable accommodation.

Dr. Hussein's recommended accommodations—(1) that Charles lift no more than 15-20 pounds; and (2) that Charles sit for no more than one hour without getting up and walking for at least five minutes—were unnecessary because

Charles's job did not require her to lift more than 20 pounds, and she could already get up and walk at least five minutes of every hour. Charles does not address this point in her response, focusing instead on her claim that the UTMB did not engage in good faith in the interactive process. The interactive process "is a flexible give-and-take between the employer and employee, so that together they can determine what accommodation would enable the employee to continue working." *Ward v. McDonald*, 762 F.3d 24, 32 (D.C. Cir. 2014) (quotation omitted). Even if I assume that Charles is correct and UTMB did not engage in good faith in the interactive process, she "must also establish that the interactive process would have likely produced a reasonable accommodation." *Barber ex rel. Barber v. Colo. Dep't of Revenue*, 562 F.3d 1222, 1231 (10th Cir. 2009). *See also Bailey v. Bd. of Comm'rs of La. Stadium & Exposition Dist.*, 484 F. Supp. 3d 346, 434 (E.D. La. 2020) ("Thus, a failure to engage in the interactive process is only actionable if, among other things, a good faith effort to assist the disabled could have resulted in a reasonable accommodation." (quotation omitted)), *aff'd sub nom. Bailey v. France*, 852 F. App'x 852 (5th Cir. 2021). Charles's failure to identify such a reasonable accommodation is fatal to her claim.

To the extent Charles bases her claim on UTMB's alleged failure to engage in the interactive process after receiving information from her neurologist, that claim is also doomed. The recommendation of Charles's neurologist, Dr. Khalil, was that she not return to work. Not working is not a reasonable accommodation. *See Moss v. Harris Cnty. Constable Precinct One*, 851 F.3d 413, 419 (5th Cir. 2017) ("taking leave without a specified date to return . . . is not a reasonable accommodation"); *Reed v. Petroleum Helicopters, Inc.*, 218 F.3d 477, 481 (5th Cir. 2000) (holding that "indefinite leave" is not a reasonable accommodation); *Gilbert v. Frank*, 949 F.2d 637, 642 (2d Cir. 1991) ("'reasonable accommodation' does not mean elimination of any of the job's essential functions"). Charles points to no authority to suggest otherwise. Thus, I must recommend that UTMB's motion for

summary judgment be granted as to her claim of discrimination under the Rehabilitation Act.

E. **RETALIATION UNDER THE REHABILITATION ACT**

Charles also advances a retaliation claim under the Rehabilitation Act. The prima facie elements for a retaliation claim under the Rehabilitation Act are identical to a retaliation claim brought under Title VII. *See Shurb v. Univ. of Tex. Health Sci. Ctr.*, 63 F. Supp. 3d 700, 711 (S.D. Tex. 2014). Accordingly, Charles's Rehabilitation Act retaliation claim fails for the same reason her Title VII retaliation claim failed. The portion of Charles's response addressing her retaliation claim under the Rehabilitation Act deals entirely with her April 24, 2019 letter responding to UTMB's Notice of Intent to Terminate and the events that followed. Assuming the April 24, 2019 response constitutes a protected activity, it is no evidence of causality because UTMB had already contemplated terminating her. *See supra* at 11–12 (Sec. C). Therefore, I recommend granting UTMB's motion for summary judgment as to retaliation under the Rehabilitation Act.

F. **DAMAGES/MITIGATION**

As a final matter, UTMB argues that summary judgment is appropriate because Charles has no damages and has failed to mitigate her damages. Because I am already granting summary judgment in favor of UTMB, I need not address these additional arguments.

## CONCLUSION

For all the reasons stated above, I recommend that UTMB's Motion for Summary Judgment (Dkt. 31) be **GRANTED**.

The Clerk shall provide copies of this Memorandum and Recommendation to the respective parties who have 14 days from receipt to file written objections under Federal Rule of Civil Procedure 72(b) and General Order 2002–13. Failure to file written objections within the time period mentioned shall bar an aggrieved party from attacking the factual findings and legal conclusions on appeal.

SIGNED this 2nd day of August 2022.

_____
ANDREW M. EDISON
UNITED STATES MAGISTRATE JUDGE